IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| KAREN SCHWEICKART, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) |
| | ) |
| EMBURSE, INC., | ) Case No. _____ |
| | ) |
| | ) Judge: |
| | ) Magistrate Judge: |
| | ) |
| | ) **JURY TRIAL DEMANDED** |
| | ) |
| *Defendant*. | ) |

**CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF
AND DEMAND FOR JURY TRIAL**

Plaintiff Karen Schweickart files this civil complaint and jury demand, by and through her undersigned counsel, for violations of 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Illinois Human Rights Act, 5 Ill. Comp. Stat. 5/1-101 *et seq.* ("IHRA"), against Defendant Emburse, Inc. ("Emburse").

**Jurisdiction and Venue**

1. This Court has personal jurisdiction over Emburse because it conducted significant business in this judicial district during all times relevant during the events described herein.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it asserts claims that arise under Title VII.

1

3. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1343(a)(4),

4. This Court has supplemental jurisdiction over Schweickart's IHRA action pursuant to 28 U.S.C. § 1367(a).

5. Venue in this judicial district and division is proper pursuant to 28 U.S.C. § 1391(b)(2) because Emburse did significant business in this district during all times relevant to the events described herein.

## Administrative Procedure

6. Plaintiff has exhausted all mandatory pre-complaint procedures required by law by filing timely administrative complaints with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR").

7. Specifically, on February 21, 2024, Plaintiff filed Charge No. 440-2024-12684 with the EEOC and on February 23, 2024, Plaintiff filed Charge No. 2024CR2931 with IDHR against Defendant for retaliation for reporting sexual harassment.

8. She received a Notice of Right to Sue from the EEOC on or after October 2, 2024, and timely filed this complaint within 90 days of her receipt of notice of right to sue from the EEOC.

9. Plaintiff timely requested that the IDHR adopt the EEOC's findings on October 2, 2024. A Notice of Opt Out of the Investigative and Administrative Process, Right to Commence an Action in Circuit Court or Other Appropriate Court of Competent Jurisdiction, and Order of Administrative Closure ("IDHR Letter") was issued and mailed by the IDHR on October 23, 2024, authorizing Plaintiff to commence action within 90 days of receipt. Plaintiff timely filed her complaint within 90 days of her receipt of the IDHR Letter.

**Parties**

10. Plaintiff Schweickart is a resident of the State of Illinois and is a U.S. citizen.

11. Defendant Emburse, Inc. is a Delaware corporation and is headquartered in Portland, Maine.

**Factual Allegations**

12. On or about May 16, 2022, Schweickart began her employment with Emburse as Vice President/Associate General Counsel, and Schweickart reported directly to Emburse's Chief Legal Officer, Christian Na.

13. Schweickart's job duties and responsibilities included supervising Emburse's contract managers, implementing processes to ensure efficient review of contracts, ensuring timely review of sales contracts to assist Emburse's sales team in meeting quarterly sales goals, and negotiating key sales agreements with customers.

14. Throughout her employment, Schweickart's performance met or exceeded Defendant's legitimate expectations. In fact, Schweickart received full merit bonuses every quarter during her tenure at Emburse, as a result of Na approving each quarterly full merit performance bonus with Emburse's HR department. Each quarter, Na had the opportunity to reduce or eliminate Schweickart's full merit performance bonus in his discretion, but he did not.

15. On or around August and September 2023, Emburse's senior corporate counsel, Diana Lai, told Schweickart that Na was insisting Lai meet him for a work trip in Barcelona in October, which was causing Lai physical distress. Lai told Schweickart that Na would not give Lai a clear business need for the meeting even though Emburse had recently announced that business travel should be conducted only when strictly necessary to cut costs. In addition, Lai told Schweickart that Na would frequently no-show/cancel meetings with her during the day,

3

only to call her after working hours for long calls, sometimes exceeding one hour, about routine, non-emergency topics. Lai also told Schweickart that Na had requested Lai add him to one of her personal text-message groups, which she declined.

16. On or about September 23, 2023, Schweickart had a phone call with Lai.

17. During the call, Lai told Schweickart that when Lai first started at Emburse, Na asked why she was still single. She also reported to Schweickart that Na had recently asked Lai if he made her "uncomfortable." When Lai was confused and asked for further clarification, Na said that he was asking because he noticed Lai sat far away from him in in-person meetings. She also told Schweickart that when Na learned that Lai enjoyed consuming Korean media, Na told Lai that she could call him "*oppa*."

18. In Korean, "*oppa*" is an honorific used by any younger woman for any older man in any context; however, it is also noted to have a connotation of being used between couples and being more of a romantic term. Na also offered to allow Lai to stay at his AirBNB.

19. Emburse's discrimination and harassment policy mandates that managers "report instances of suspected harassment, either witnessed by them, or reported to them, as part of their job responsibilities to Human Resources, the President, or any officer of the Company."

20. Schweickart told Lai that as a manager, it was her responsibility to report what Lai told her to the company. Schweickart asked Lai if she agreed, and she did.

21. On or about September 24, 2023, Schweickart submitted a report to Emburse's Chief Executive Officer Eric Friedrichsen, its Chief Financial Officer Adriana Carpenter, and Chief People Officer Danielle Tabor reporting Na's statements to Lai, as well as other behaviors that Schweickart noted seemed to be part of a pattern with Na.

22. On or about October 2, 2023, Shanta Docusian from Emburse's human resources

office informed Schweickart that Na was not yet aware of the allegations made against him and that Emburse was finalizing the details with an investigative company and outside counsel. Docusian and human resources employee Jennifer Pelletier told Schweickart that she was to continue to conduct business as usual with Na.

23. Between September 30, 2023, and October 11, 2023, Na approved Schweickart receiving 100% of her merit bonus for her performance from July 1, 2023 through September 30, 2023. Schweickart was paid this full quarterly bonus on October 31, 2023.

24. On October 17, 2023, Schweickart requested and received unpaid leave under the Family Medical Leave Act ("FMLA") to care for her mother who had entered hospice care.

25. While on FMLA leave, on or about October 19, 2023, Emburse's investigator interviewed Schweickart and asked her about Na's statements to Lai, as well as other behaviors that Schweickart noted seemed to be part of a pattern. Emburse's investigators also interviewed Lai and Na.

26. On October 28, 2023, Schweickart's mother died and on November 2, 2023, Schweickart informed Emburse of the same.

27. In or about the time period between November 3, 2023, and November 5, 2023, Emburse's investigator asked Lai if she could obtain copies of her cell phone records showing long late evening calls between Lai and Na. When Lai obtained the records, the investigator told her that she could send the records for the investigation if she wanted to, but the investigation had already been completed.

28. On or about November 6, 2023, Carson Burnham of the law firm Ogletree Deakins called Schweickart and informed her that the sexual harassment allegations against Na were not substantiated. For the first time, Burnham also informed Schweickart that Emburse had

been planning to take "an employment action" against Schweickart based on Schweickart's communications with Na in September of 2023.

29. Burnham stated that based on what Schweickart included in her report about Na, it sounded to her like Schweickart had difficulty working with Na and did not respect him. She asked Schweickart to come up with ideas for how she and Na could work together.

30. On or about November 8, 2023, Burnham called Schweickart and informed her that Emburse had decided to take employment action against her.

31. On or about November 9, 2023, Na and Pelletier called Schweickart and told her employment was being terminated. They gave Schweickart the option of November 15, 2023, or December 15, 2023, as her final day, and Schweickart chose December 15, 2023.

32. Prior to being terminated, Schweickart had not received any disciplinary actions during her employment with Defendant.

33. During the termination call, Na stated that he terminated Schweickart's employment because they did not have a good working relationship, and they were not getting along.

34. Schweickart retained counsel and advised Emburse that she was contemplating filing an employment discrimination action against Emburse based on gender discrimination, and in response, on or about December 5, 2023, Emburse revoked a proposed severance package offer it previously conveyed and terminated her effective immediately.

35. On or around December 2023, Lai resigned from Emburse, citing fear of retaliation in a written email to Human Resources.

36. On or around April 10, 2024, Na was terminated from Emburse.

37. Schweickart has sustained economic damages and mental anguish as the result of

6

Emburse's illegal actions, and she will continue to sustain damages into the future.

## COUNT I
### Retaliation (Sex)
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000(e), *et seq*.

38. Schweickart hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

39. Schweickart is an "employee" as the term is defined in 42 U.S.C. § 2000e *et seq*.

40. Emburse is an "employer" as the term is defined in 42 U.S.C. § 2000e *et seq*.

41. To prevail on an unlawful retaliation claim, Schweickart must establish: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022).

42. Schweickart engaged in protected conduct when she reported suspected sexual harassment by Na to Emburse.

43. Emburse took adverse employment actions against Schweickart, including terminating her.

44. Defendant retaliated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

45. There is a causal connection between Schweickart's protected activity and Emburse's adverse employment actions.

46. Emburse was aware of Schweickart's protected conduct.

47. Schweickart has suffered damages as a result of Emburse's retaliation.

## COUNT II
### Retaliation (Sex)
### Illinois Human Rights Act
### 5 Ill. Comp. Stat. 5/1-101 *et seq.*

48. Schweickart hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

49. Schweickart is an "employee" as the term is defined in 5 Ill. Comp. Stat. 5/1-101 *et seq.*

50. Emburse is an "employer" as the term is defined in 5 Ill. Comp. Stat. 5/1-101 *et seq*.

51. To prevail on an unlawful retaliation claim, Schweickart must establish: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *Hoffelt v. Ill. Dep't of Hum. Rts.*, 867 N.E.2d 14, 19 (Ill. App. Ct. 2006).

52. Schweickart engaged in protected conduct when she reported suspected sexual harassment by Na to Emburse.

53. Emburse took adverse employment actions against Schweickart, including terminating her.

54. There is a causal connection between Schweickart's protected activity and Emburse's adverse employment actions.

55. Emburse was aware of Schweickart's protected conduct.

56. Schweickart has suffered damages as a result of Emburse's retaliation.

8

## PRAYER FOR RELIEF

Based on the foregoing, Schweickart respectfully requests that the Court enter judgment in her favor and award to her the following relief:

a. Legal and equitable relief;

b. Lost wages and benefits;

c. Front pay;

d. Economic, compensatory, punitive damages;

e. Attorney's fees and costs;

f. Pre-judgment and post-judgment interest; and

g. Any other relief that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff Karen Schweickart demands a trial by jury for any and all issues proper to be so tried.

Respectfully submitted,

/s/*Thalia Pacheco*
Thalia Pacheco
Workplace Law Partners, P.C.
155 N Michigan Avenue
Suite 719, Chicago, IL 60601
Telephone: (312)861-1800
tpacheco@fishlawfirm.com
docketing@fishlawfirm.com

*Attorney for Plaintiff*